RECEIVED

AUG 1 5 2016

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

FILED

AUG 1 5 2016

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

GUADALUPE PADILLA,          §
          Petitioner,       §        CIVIL ACTION NO._____
                            §
V.                          §        BRIEF IN SUPPORT OF
                            §        PETITION FOR WRIT OF
LORIE DAVIS -               §        HABEAS CORPUS § 2254
Director of TDCJ-CID,       §
          Respondent,       §        A16CV0975  SS

## INTRODUCTION

Guadalupe Padilla, hereafter Petitioner, submits the follow-
ing Brief in support of Petition for Writ of Habeas Corpus under
28 U.S.C.S. §2254.

Respectfully sumbitted,

*Guadalupe Padilla*

Guadalupe Padilla #1088118
C.T. Terrell Unit
1300 FM 655
Rosharon, TX  77583

Petitioner Pro Se

<u>INDEX</u>

<u>page</u>

Intorduction

Standard of Review

Successive Writ

Statement of the Case

Statement of Facts

Ground

    I. Petitioner challenges State procedures used to
deny parole - did the Texas Board of Pardons and
Paroles properly administer procedures/processes
used to guide release determinations; and do
these procedures give an offender a fair and
adequate avenue to pursue grievances concerning
parole procedures, as the U. S. Supreme Court
and U.S. Federal Courts insist they must ?

and/or

    did the Texas Board of Pardons and Paroles vio-
late article II, section I, of the Texas Consti-
tution in relation to the application of parole
review procedures used to guide parole release
determinations ?

    Supporting Facts

    State Procedures

      Texas Government Code:

        A. §508.144 - Parole Guidelines

        B. §508.046 - Extraordinary Vote

        C. §508.504 - Records of Complaints

        D. §501.008 - Offender Grievances

      Texas Administrative Code:

        Rules 145.2; 145.3(4); 145.17

Argument and Discussion

Conclusion

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN, DIVISION

| | | |
|---|---|---|
| GUADALUPE PADILLA, | § | CIVIL ACTION NO. _____ |
|      Petitioner, | § | |
| v. | § | BRIEF IN SUPPORT OF |
| LORIE DAVIS - | § | PETITION FOR WRIT OF |
| Director of TDCJ-CID, | § | HABEAS CORPUS §2254 |
|     Respondent, | | |

Guadalupe Padilla, Petitioner is illegally restrained of his liberty in the C.T. Terrell Unit of the Texas Department of Criminal Justice -Criminal Institutional Division, (TDCJ-CID) pursuant to judgement of the 167th District Court of Travis County, Texas. Petitioner seeks relief under 28 U.S.C.S. §2254.

## STANDARD OF REVIEW

The U.S. Supreme Court has held that habeas corpus review under 28 U.S.C.S. §2254(d) was limited to the record that was before the State court which adjudicated the prisoner's claim on the merits, and on the record before the State court..... Cullen v. Pinholster, 2011 U.S. LEXIS 2616, 563 U.S. 170.

The Fifth Circuit Court of Appeals has held that challenges to the result of a single defective parole hearing must be pursued by a writ of habeas corpus and that broad-based challenges to Board's Rules and Procedures that affect a prisoner's release must also be pursued in habeas corpus, if resolution of the factual and legal allegations would automatically entitle the plaintiff to accelaerated release. Cook v. Texas Dept. Crim. Justice Transactional Planning Department, 37 F.3d 166, 168 (5th Cir.1994)- (citing Johnson v. Pfeifer, 821 F.2d 1120, 1123 (5th Cir.1987).

## SUCCESSIVE WRIT

Because Petitioner complains about actions taken by the

Texas Board of Pardons and Paroles in 2015, Petitioner could not have brought this claim in an earlier application/petition because this claim had not yet arisen. Crone v. Cockrell, 324 F.3d 833, 837 (5th Cir.2003). The factual predicate for Petitioner's parole related claim occurred in 2015.

## STATEMENT OF THE CASE

Petitioner was indicted and convicted for sexual assault of a child. The alleged victim was the 11-year old daughter of his live-in girlfriend. Petitioner was found indigent and the court appointed counsel. Petitioner pled not guilty and proceded to trial by jury. Petitioner was convicted and sentenced to 37-years imprisonment in Feb. 2002. Notice of appeal was timely filed and the Third Court of Appeals of Texas affirmed the judgement on June 19, 2003, in case no. 03-02-00345-CR. Petition for discretionary review was refused by the Texas Court of Criminal Appeals, and writ of certiorari to the U.S. Supreme Court was also denied. Petitioner's State and Federal writs of habeas corpus were timely filed and denied. This is a subsequent/successive writ of habeas corpus. Note: post-conviction DNA testing was granted but results remained inconclusive. Further DNA litigation is currently pending.

## STATEMENT OF FACTS

Petitioner was convicted of a 3g offense and was required to serve half of his sentence before becoming eligible for parole. Petitioner was sentenced to 37-years imprisonment and given back-time jail credits of approximately 5-years. Petitioner became eligible for parole in May of 2015, and was provided with notice of parole interview and given opportunity to submit parole plan.

At parole interview (April 15, 2015) the unit parole officer

2.

verbally recited a "narrative" of the offense for which Petitioner was convicted, and asked if the narrative was true. This narrative attempted to coerce a confession out of Petitioner and make Petitioner inculpate himself in this offense. Petitioner stated he would not comment due to litigation activity related to challenges to judgement and DNA testing litigation.

After parole interview, Petitioner submitted an amended parole plan in response to said narrative, to the Board of Pardons and Paroles (BPP) in April 24, 2015. [Attach. #1].

On or about June 24, 2015, the BPP modified approval/denial reasons for granting or denying parole. [Attach. #2]. On or about June 25, 2015, Petitioner received "notice" of Panel decision – decision not to grant parole, and next parole review date would be May of 2018 (3-year setoff), and the reasons for setoff.[see Attach. #3].

On July 17, 2015, Petitioner submitted request for "Special Review" of parole denial. [Attach. #4[. On Oct. 07, 2015, the BPP denied Petitioner's request for special review on the basis that request did not meet criteria. [Attach. #5].

## GROUND

Petitioner challenges State procedures used to deny parole – did the Texas Board of Pardons and Paroles properly administer the procedures used to guide parole release determinations, and do these procedures give an offender a fair avenue to pursue grievances concerning parole procedures, as the U.S. Supreme Court and U.S. Federal Courts insist they must ?

and/or

Did the Texas Board of Pardons and Paroles violate

Article II, Section I, of the Texas Constitution in
relation to the application of parole review procedures
used to guide parole release determinations ?

## Supporting Facts

1. Offender has served 19-years in prison on present conviction;

2. Parole interview was conducted on 4-14-2015;

3. Offender's parole plan was submitted 4-14-2015; and amended
   parole plan was submitted on 4-24-2015; [Attach. #1]

4. The BPP modified parole approval/denial reasons in 2015;
   [Attach. #2];

5. The BPP notice of parole panel decision was issued 6-25-2015.
   [Attach. #3];

6. Offender submitted request for "Special Review" of parole
   panel decision on 7-17-2015. [Attach. #4];

7. The BPP denied request for "Special Review" on 9-16-2015.
   [Attach. #5].

## State Procedures Entitled
## To Statutory Due Process

A Texas inmate does not have a federal right to have accu-
rate information in his parole file or to complain of the consti-
tutionality of procedural devices attendant to parole decisions.
Gross v. Quarterman, 2007 U.S. Dist. LEXIS 922212; citing Johnson
v. Rodriguez, 110 F.3d 299, 308-309 (5th Cir.1997). Rather, such
concerns are matters for the responsible State agencies and it
is to those bodies that grievances concerning parole procedures
should be addressed. Johnson v. Rodriguez, 110 F.3d at 308-309;
citing Brandon v. District of Columbia Board of Parole, 823 F.2d
at 649 (D.C. Cir.1987):

> Brandon, at 649 - "Although equal protection principles require
> State's to apply their laws rationally and non-arbitrarily, as dis-
> cussed further below, a State does not violate an individual's

federal constitutional right to procedural due process merely by
deviating from it's own established procedures. In sum, we hold
that the procedures adopted by the State court to guide its parole
release determinations are not themselves liberty interests entitled
to constitutional due process protection. Brandon does not have a
constitutionally protected interest in having the parole board adhere to
it's procedural requirements. Thus, even if the board failed to comply
with its regulations with regard to the conduct of its separate hear-
ings, as Brandon alleges, that failure did not violate Brandon's
federal constitutional right to due process of law. Such State pro-
cedural requirements must be enforced in State courts under state law
. see Booth v. Hammock, 605 F.2d 661-664, 665 (2d. Cir.1979). (Cf,
Hewitt v. Helms, 459 U.S. at 471, 103 S.Ct. at 871)-(the adoption
of...... procedural guidelines [to channel] the decision-making of
prison officials without more, suggests that it is these restrictions
alone, and not those that the federal courts may impose under the
Due Process Clause, that the State chose to require); Greenholtz v.
Inmates Neb. Pen. Cor., 442 U.S. at 3, n. 2, 99 S.Ct. at 2103-(suggesting
that inmate could seek relief under State law for Borar of Paroles
departures from standard practice) we decline to"federalize" - indeed
"constitutionalize" - every deviation from State procedures."
Brandon, at 649.

## State Parole Review Procedures

In Texas, parole review procedures can be found in the fol-
lowing (below). Petitioner will discuss each in part:

* Texas Government Code §508.144 - Parole Guidelines;

* Texas Government Code :508.046 - Extraordinary Vote by Members
                                   of Parole Board;

* Texas Government Code §508.054 - Record of Complaints;

* Texas Government Code §501.008 - Offender Grievances

* Texas Administrative Code, Title 37, Part 5, Chapter 145 -
  (Rules).

### 508.144 - Parole Guidelines (Suitability for Parole

When evaluating whether to release an inmate on parole, the
parole panel is assisted by guidelines developed by the parole

board. The standard parole guidelines include the following factors: 1. current offense or offenses; 2. time served; 3. the risk factors - (consideration for public safety; 4. institutional adjustment; 5. the criminal history; 6. official information supplied by trial officials including victim impact statements; and 7. information in support of parole. (see also Tes. Admin. Code §145.2(b)(1),(2); and Felan v. State, 44 S.W.3d 249, 257 (Tex. App. Fort Worth 2001 - (citing Espinoza v. State, 29 S.W.3d 257, 261 (Tex.App.[Hous.14th Dist.] 2000)).

From the analysis of §508.144, the court of appeals in Espinoza v. State, concluded that the accrual of good conduct time is both: 1. evidence of an inmate's institutional adjustment; and 2. information in support of parole. Espinoza, at 261. and see Felan, at 257:

> Felan, at 257 - "Good conduct time is an important aspect of both mandatory supervision and parole. In the context of mandatory supervision, good conduct time is perhaps a more decisive factor because it is part of the equation used in calculating the release data. On the other hand, parole is discretionary and is not computed according to a formula. However, the accumulation of good conduct time is nevertheless an important consideration when deciding whether an inmate should be released on parole....."

In addition, the Texas Supreme Court has hled that society includes not only free citizens but also inmates in the penitentiary. Jones v. State, 843 S.W.2d 487, 495 (1992).

### §508.046 - Extraordinary Vote

Once a prisoner is entitled for parole the Board votes on his suitability for parole. The rule at issue here provides:

> §508.046 - To release on parole an inmate who was convicted of a capital felony..... all eighteen members of the BPP must vote on the

release on the parole of the inmate, and at least two/thirds of
the members must vote in favor of the release on parole. A member
of the Board may not vote on the release unless the member first
recieves a copy of a written report from the department on the pro-
bability that the inmate would commit an offense after being released
on parole."

## §508.054 – Record of Complaints

Provides:  (a) – the Board shall maintain a system to promptly and
effectively act on complaints filed with the Board. The Board shall
maintain information about parties to the complaint, the subject
matter or the complaint, a summary of the results of the review or
investigation of the complaint, and its disposition;

(b) – the Board shall make information available describing its
procedures for complaints, investigations and resolutions;

(c) – **this section does not apply to a complaint about an indi-
vidual parole determination or clemency determination.**

## §501.008   – Offender Grievances

Texas Government §501.008 provides an avenue for inmate's to pursue
administrative remedies for their complaints and grievances. However,
Chapters 501 and 508 of the Government Code do not have sections for
complaints addressing parole grievance procedures. Furthermore, the
Texas Department of Criminal Justice – Criminal Institutional Divi-
sion does not provide an administrative remedy system for resolution
of grievances by inmates housed in their facilities, in relation to
parole procedures. (see Offender Orientation handbook, which specifi-
cally states:  "**YOU (OFFENDER) may not grieve parole deci-
sions.**"  (Chapter VI, pg. 53, Offender Orientation Handbook).

## Chapter 145 – Texas Administrative Code

Texas Administrative Code, Title 37, Part 5, Rule 145.2, pro-
vides in relevant part:  Parole review panels are vested with com-
plete discretion in making parole decisions to accomplish the
mandatory duties found in Chpater 508 Texas Government Code.

Rule  145.3 – Standard Parole Guidelines have been adopted
by the parole panels in the selection of possible candidates for

release. The parole guidelines consist of "risk assessment instrument" and an offense severity scale. Combined these components serve as an instrument to guide parole release decisions. Scores from the risk assessment instrument are combined with an offense severity rating for the sentenced offense of record to determine a parole candidates guideline level. Guidelines do not create an expectation of release, but only serve as an aid to the parole decision process and the parole decision shall be at the discretion of the voting panel. Tex. Admin. Code, - Rule 145.2.

In addition, Rule 145.3(4) also provides: Any consideration by a parole board member or Parole Commissioner of an Offender's litigation activities when determining an offender's candidacy for parole is strictly prohibited. No Offender will be denied the opportunity to present to the judiciary, including appellate courts, hsi or her allegation concerning violation of fundamental constitutional rights. Any consideration of such activity during the parole review, supervision, or revocation process is a violation of Board policy. In the event parole is denied in violation of this section, the offender may pursue a remedy under the Special Review provision of section 145.17 of this title (relating to action upon special review - release denied). Texas Admin. Code, Title, 5, Part 5, Rule 145.3(4).

Action upon Special Review can be based on information not previously available to parole panel can mean an allegation that the parole panel has committed an error of law or Board Rule. Upon considering a case for special review, the special review parole panel may take the following actions: revote the case in accordance with applicable provisions of subchapter _A_ of Chapter

(relating to parole process), Tex. Admin. Code, Title 37, Part 5, Chapter 145.

Argument and Discussion of State Procedures

Petitioner is a pro se litigant and respectfully asks the Court to liberally construe his argument and discussion.

Petitioner challenges the State procedures used to deny parole and procedures , or lack thereof, to pursue parole griev-ance procedures. In other words, are the procedures used by Texas State agencies and adopted by State Courts to guide its parole release determinations and the review of complaints arising from them, interests entitled to statutory due process protections as described under the Texas Constitution, Article II, Section I, and see Boykin v. State, 818 S.W.2d 782 (Tex.Crim.App.1991) ?

At trial, the State offered Petitioner a plea deal of 15-years imprisonment. (5 RR 8-9). Petitioner proceeded to jury trial, was convicted and sentenced to 37-years confinement. The trial court awarded Petitioner over 4½ years backtime jail time credited to his sentence. Petitioner's offense required that he serve half of his sentence before becoming eligible for parole in May of 2015. At parole interview, Petitioner submitted parole plan which con-tained amongst other things, request for limited or conditional release to a "community residential facility" (Tex. Gov't. Code §508.119) due to parole conditions that would be attached to his parole contract and potential release.

At the time of Petitioner's parole review of May, 2015, he had amassed over 18½ years flattime credit; over 16-years good time credits and over 8½ -years work time credits. His parole plan also contain recommendation from his TDCJ-CID job supervisor

8.

and ITP plan, along with parole support letters that included offers of financial assiatance.

At parole interview of 4-14-2015, I informed parole officer - B. Laing that I was pursueing litigation in both State and Federal courts in relation to post-conviction DNA testing. P.O. Laing proceeded with interview where she asked me questions and asked me to respond to a written narrative she possessed which included highly inculpatory statements in relation to the evidence and testimony from the trial in this case. My parole plan was accepted by P.O. but the interview revolved around the narrative.

Petitioner alleges that the parole panel violated provisions of both the Texas Administrative Code, Title 37, Part 5, Chapter 145, and the Texas Government Code, Chapter 508, as discussed in relevant part below.

Petitioner contends that the parole board violated Rule 145. 3(4) of the Texas Administrative Code, when the Panel considered my litigation activity and attempted to coerce me into confessing to highly incriminating evidence and testimony from the trial of my sentenced offense in violation of my 5th Amendment right against self-incrimination. [Attach. #1]. The written narrative was included in my parole interivew and review process. If I would have responded to interviewer's questions and statements, arising from said narrative, I would have volunteered responses (evidence) that could have been used by State agencies, in the judiciary, in challenging my assertions of actual innocence related to post-conviction DNA testing. In addition, the interviewer and narrative prejudiced my parole interview to the point that I may have been perceived as uncooperative and/or unsuitable for parole. The results

of the parole interview may have negatively impacted the compo-
nents of each reason the parole baord used to deny my parole. [see
Attach. #2]. As a result of interview and narrative used by the
State at my interview, I submitted an "amended parole plan on
April 24, 2015, in an attempt to rebut the narrative. [Attach. #1].

On or about July of 2015, offenders were notified, via TDCJ-
CID prison newspaper (The ECHO), that the Texas BPP had recently
approved the modifications of the "Approval/Denial "reasons" pro-
vided by a parole panel when rendering a parole decision. These
modified reasons were supposed to provide clear and concise rea-
sons for the approval or denial of parole and should have elimina-
ted any ambiguity that may have previously existed with certain
approval/denial reasons. (Attach. #2).

Petitioner respectfully asks this reviewing court to examine
the modified reasons and compare them to the reasons the parole
Panel used to deny Petitioner's parole to see if the parole board
panel adhered to new rule or mew modifications, and/or whether a
new rule applies to Petitioner ?

Petitioner received formal notification of the BPP's decision
to deny parole on or about June 25, 2015. [Attach. #3]. Petitioner
alleges that the BPP Panel violated section 508.144 Texas Govern-
ment Code and Rule 145.2 of the Texas Administration Code, Title
37, Part 5, in regards to the application of the <u>risk assessment</u>
<u>instrument score</u> in making its parole decision. Petitioner contends
his parole guideline score was in a scale range reflecting his
suitability for parole. A copy of the "Minutes Detail Sheet" re-
flects how parole board members voted on my parole review. [see
attach. #4]. The parole guideline was "redacted". It is the

Petitioner's position that the parole guideline score would contradict and conflict with the parole panel's reasons for denying parole in relation to evaluating the relative risk that I would re-offend and be a threat to public safety. This violation resulted in an unfair evaluation of the relative risk that I would re-offend and appears to have negatively impacted my parole review process.

Petitioner was convicted of a capitol felony which requires all 18-members of the BPP to vote on my release. Gov't. Code §508. 046. Petitioner alleges that based on the parole board's minutes sheet [Attach. #4], only 4-members of the BPP appear to have voted. Without more, the minutes sheet does not compliance with §508.046. It would also appear that all 18-members did not review a copy of written report from the department (TDCJ-CID) ib probability that offender would re-offend, as the statute requires. §508.046. [Note: Petitioner attempted to obtain a copy of said report but his request was denied by the BPP].

In contrast to the alleged violations of Chapter 145, Tex. Admin. Code Title 37, Part 5, and Chapter 508 Tex. Gov't. Code, as described above, Petitioner contends that he should have been considered as suitable for parole based on parole guidelines, if it were not for said violations described above.

In addition, Petitioner contends the BPP Panel failed to give due consideration to parole guideline factors involving the accumulation of good conduct time. Texas Courts of Appeals have held that good conduct time is both: (1) evidence of an inmate's "institutional adjustment", and (2) information in support of parole. see Felan v. State, 44 S.W.3d 249, 257 (Tex.App.Fort Worth 2001) Espinoza v. State, 27 S.W.3d 257, 261 (Tex.App.Hous.[14th Dist]

2000). and as stated above, the Texas Supreme Court has held that "society" includes not only free citizens but also inmates in the penitentiary. Jones v. State, 843 S.W.2d 487, 489 (Tex. 1992).

Thus, in light of the appellate court's interpretation of good condict time, Petitioner's institutional adjustment in "society", the alleged violations of parole guideline rules, and the contrasting reasons given for parole denial, Petitioner claims he is entitled to a new parole hearing without the violations discussed above.

Below, please find the eeasons given by the BPP Panel for denying parole to Petitioner and for giving him a 3-year setoff:

Reason #2D - The record indicates that the inmate committed onr or more violent criminal acts indiczting a conscious disregard for the lives, safety, or property of others; or the instant offense or pattern of criminal activity has elements of brutality, violence, or conscious selection of victim's vulnerability such that the inmate poses a continueing threat to public safety; or the record indicates use of a weapon.

Reason #1D - The record indicates that the inmate has repeatedly committedcriminal episodes or has a pattern of similar offenses that indicates a pre-disposition to commit criminal acts when released; or the record indicates that the inmate is a leader or active participant in gang or organized criminal activity; or the record indicates a juvenile or an adult arrest or investigation for felony and misdemeanor offenses.

After receipt of parole denial notice, Petitioner requested a "Special Review of Parole Denial." pursuant to Rule 145.17 Tex. Admin. Code, Title 5, Part 5, alleging the parole panel committed an error of board rules - Rule 145.17(C). The Special Request of July 17, 2015 was based on issue involving the alleged violation of Administration Code and Government Code - rules and sections named above, and for not giving due consideration to factors in-

volving good time credits as described above. To be specific, Petitioner has amassed over 18½-years flat time credit, over 16-years good time credit and over 8½-years work time credit. Petitioner also has a very good disciplinary record, is not a gang member, had met his educational requirements and did not have any detainers pending. [Attach. #5].

The Parole board's "Special Review" procedure appears to be **the only State process available for submitting a complaint or a grievance in regards to parole review procedures. Rule 145.17.**

In this instance, the Texas BPP responded to Special Review request on Oct. 07, 2015, [Attach. #6], with what appears to be a boilerplate response without specifically addressing allegations or complaints named in Request for Special Review. The BPP stated; "Your request does not meet criteria of Rule 145.17 at this time... and that information that I provided would be placed in the permanent file to be available for consideration by the parole panel at the appropriate time.

Considering the Texas Government Code, Chapter 501 and 508 do not provide a State process for an inamte to complain or grieve parole procedures, in reality, Texas only provides for a procedure titled "Special Review" under Texas Administrative Code, Given the boilerplate type response and the failure to provide a factual answer on the merits of Petitioner's allegations, Petitioner contends the "Special review" procedure does not provide an adequate State procedural requirement that can be enforced in Texas State courts, as the federal courts and the U.S. Supreme court insist they must. Johnson v. Rodriguez, 110 F.3d. 299, 309 (5th Cir.1997), citing Brandon v. Dist. of Col. Bd. of Parole, 823 F.2d

644 (D.C.Cir.1997), citing Hewitt v. Helms, 459 U.S. at 471, 103 S.Ct. at 871 (1983).

## Unreasonable Application of U.S. Supreme Court Law

Petitioner argues that the instant petition should not be denied until the Court grants an evidentiary hearing and make factual findings. Petitioner has adequately alleged facts that would entitle him to relief that will render invalid the State proceedings used to deny parole suitability, but does not seek immediate or speedier release.

Petitioner contends the State court record is not adequately developed to meet federal habeas review standards. The U.S. Supreme Court has held that habeas corpus review under 28 U.S.C §2254 is limited to the record that was before the State Court which adjudicated the prisoner's claim on the merits and on the record before the State court. Cullen v. Pinholster, 2011 U.S. LEXIS 2616, 563 U.S. 170.

Here the State court held no evidentiary hearing or made any findings of fact or conclusions of law in support of its decision. However, based on the attachments to §2254 Petition and Memorandum, the record is suppicient to show the court additiional findings are necessary.

PRAYER

Petitioner prays the court grant an evidentiary hearing and make additional findings of fact to add to those included in his Petition §2254.

Respectfully submitted,

*[signature]*

14.

Guadalupe Padilla #1088118
C.T. Terrell Unit
1300 FM 655
Rosharon, TX  77583

## UNSWORN DECLARATION

I, Guadalupe Padilla TDCJ-CID No. 1088118, being presently incarcerated in the C.T. Terrell Unit in Brazoria County, Texas hereby declare under penalty of perjury that the foregoing is true and correct to the best of my beliefs, on this the __10 TH__ day of  August, 2016.

_Guadalupe Padilla_

_1 w k_

# ATTACHMENTS

#1 - AMENDED PAROLE PLAN

#2 - BOARD OF PARDONS AND PAROLES - (MODIFIED REASONS
(FOR PAROLE APPROVAL/DENIAL)

#3 - PAROLE SET-OFF/DENIAL

#4 - PAROLE PANEL MINUTES SHEET

#5 - SPECIAL REVIEW REQUEST

#6 - SPECIAL REVIEW ANSWER

April 24, 2015

Guadalupe Padilla #1088118
Terrell Unit
1300 FM 655
Rosharon, TX  77583

TEXAS BOARD OF PARDONS AND PAROLES
P. O. Box 8610, Shoal Creek Rd.
Austin, TX  78757

Re:  Amendment to Parole Plan of:

Guadalupe Padilla    No. 1088118

Dear Parole Panel:

Enclosed please find amendment to parole plan. Original plan was submitted
April 14, 2015, at parole interview. Please consider this amendment in response
to the "narrative of victim's statement" used by the parole interviewer at my
parole interview. I feel this amendment will provide the reviewing panel with
additional facts that will give the board a broader view of this case, and the
significanc of DNA test results and information from the Centers of Disease
Control in regards to the evidence used to support victim's statement/testimony.

Thank you for your time and consideration.

Respectfully submitted,

_Guadalupe Padilla_

# AMENDMENT TO PAROLE PLAN
## (of 04-14-15)

It is my hope and prayer that parole interview and review thereof, would be based upon, and due consideration given to: length of sentence served; my adjustment to prison society; my work and disciplinary record; my educational record; and a fair assessment of my ability to comply with parole rules and society's laws at this point in my life. However, in light of the "narrative of victim's statement", as presented by parole interviewer during my parole interview I feel additional facts are necessary, based on new DNA evidence, for a full and fair assessment of that narrative. I do not believe it is fair to base my parole consideration (after over 17-years of incarceration) on a victim's statement that is no longer supported by post-conviction DNA testing results.

At my trial, the prosecution did not rely soley on victim's testimony. The prosecution entered testimony of State's expert witness's:    Dr. Beth Nauert; and DNA Analyst - Gary Molina. These testimonies applied biological and medical evidence, collected on date of alleged assault (Oct. 22, 1994), to corroborate victim's testimony. The evidence included testimony from State's expert - Dr. B. Nauert, regarding medical records of St. David's Hospital - sexual assault examination, and evidence from alleged crime scene - "bedsheet with semen stains" upon which alleged assault occured.

Offender met the preponderance of the evidence standard in order to compel the trial court to order DNA testing. Based upon this post-conviction DNA testing, the DNA test results, arguably, do not support the victim's account of the alleged assault nor the testimony of the State's expert's at trial. The DNA test results should be of central importance. In direct contradiction of the evidence and testimony of the State's expert's, post-conviction DNA testing has now established the following;in regards to.

### Sexual Assault Kit Evidence

(a). Offender's DNA profile was  excluded  from the DNA profile mixture identified on vaginal swabs - no finding of semen. (see DNA Test Results - Parole Plan attachments in support);

(b). that DNA testing of sexual assault kit - vaginal swabs identified a DNA mixture with a "Major" and Minor" components, with the major component matching the victim, and minor component that was not identified;

## Bedsheet – Evidence From Scene

(a). that DNA profile mixture was identified on bedsheet and alleged victim was excluded;

(b). that Offender's DNA profile mixture was identified and that of an unknown individual. [FN 1] (see DNA Test Results – Parole Plan Attachments).

[DNA test results from bedsheet contain no finding of "minor component" identified in sexual assault kit – vaginal swabs, evidence].

Offender respectfully asks the Parole Panel to carefully examine the DNA test results in the same light as they examine the statement of alleged victim. (see Texas Administrative Code – Rule $143.2), and apply their findings to the testimony given by the State's experts trial testimonies; the sexually transmitted disease evidence, the timeline of alleged assault, and in general to the State's theory of the case. Relevant portions of the State's experts is provided below.

### Testimony of State's Expert – Dr. B. Nauert

The testimony of Dr. Nauert reflected that at the time of sexual assault exam, the emergency room doctor who performed sexual assault exam – Dr. Karen Carmody, of St. David's Hospital, tested the white vaginal discharge and found alleged victim to be infected with sexually transmitted disease – Trichomonas, with live parasitic organisms. Dr. Nauert explained to the jury that the STD in the context of the sexual assault in this case, the following: (see Vol. 7, pgs. 122 – 137, Reporter's Record). [FN 2]

(a) that victim had an acute assault and that victim did not have symptoms of STD – Trichomonas, when "SHE" (Dr. Nauert) performed a sexual assault exam on same alleged victim over 2-months prior to alleged assault of Oct. 22, 1994;

(b). that STD – Trichomonas could be contracted immediately after assault and that it's just a direct transmission from one person to another. It does not have to incubate....;

(c). that STD – Trichomonas would have to come from fluid in the semen.

### Testimony of State's Expert – DNA Analyst Gary Molina

At trial, the State performed limited pretrial DNA testing on some of

FN 1 Trial testimony of alleged victim's Mother reflects that Mother and the Offender had had consensual sex on those same bedsheets.

FN 2 Trial testimony of alleged victim reflects a lone assailant committed the assault, and that "SHE" had not had contact of sexual nature since Aug. 1994.

the evidence. Mr. Molina testified that semen, _____ was detected on bedsheet, but the victim's DNA profile was excluded. The bedsheet was from the bed upon which the alleged assault occured on Oct. 22, 1994.

No DNA testing was performed on sexual assault kit ince from Hospital examination of Oct. 22, 1994.

On the other hand, the DNA analyst stated to the jury that semen stains were discovered on bedsheet, but did not explain to the jury that the sexual assault kit - vaginal swabs were not tested for comparison and analysis.

## Conclusion

The testimony of the State's Expert - Dr. Nauzrt, that the STD - Trichomonas was transmitted to victim by another person and that the STD would have to come from fluid in the semen, taken together with testimony of DNA analyst that semen was detected on bedsheet, but without conducting DNA testing on the sexual assault kit - vaginal swabs for comparison purposes, suggested to the jury the I, the Offender, was responsible for transmitting the STD to the alleged victim on Oct. 22, 1994, during a sexual assault. This theory is highly unlikely because of the DNA test results and information provided by the Centers of Disease Control (CDC) that reflects that this type of STD - Trichomonas is spread through sexual contact, via fluid in the semen, and that there is an incubation period of 4 to 5 days or more for symptoms to develope. In this instance, the alleged victim had symptoms (vaginal discharge) and parasitic organisms within hours of alleged assault. (see CDC - Information Sheet).

Offender prays that the reviewing panel apply Rule 143.2 in their review and evaluation of this amended parole plan.

Respectfully submitted,

*Guadalupe Padilla*

Guadalupe Padilla #1088118
C.T. Terrell Unit
1300 FM 655
Rosharon, TX  77583

**Subject:**   BPP Approval/Denial Reasons Request.

**From:**   Raymond Estrada (RAYMOND.ESTRADA@tdcj.texas.gov)

**To:**   ███████████████

**Date:**   Tuesday, January 12, 2016 10:55 AM

Per our telephone discussion, the following are the Texas Board of Pardons and Paroles recently approved the modifications of the Approval/Denial reasons provided by a parole panel when rendering a parole decision. These changes will provide clear and concise reasons for the Approval or Denial of parole and will eliminate any ambiguity that may have previously existed with certain Approval/Denial reasons. Implementation and use of the new Approval/Denial reasons will be forthcoming once the applicable computer programming changes are complete.

## 1.   CRIMINAL HISTORY

**A**   The record does not include a documented pattern of violent or assaultive arrests or convictions.

**D**   The record indicates that the offender has repeatedly committed criminal episodes that indicate a predisposition to commit criminal acts upon release.

## 2.   NATURE OF OFFENSE

**A**   The record indicates non-violent offenses and the instant offense indicates no tendency toward violent/assaultive behavior, with limited potential for future assaultive type offenses.

**D**   The record indicates the instant offense has elements of brutality, violence, assaultive behavior, or conscious selection of victim's vulnerability indicating a conscious disregard for the lives, safety, or property of others, such that the offender poses a continuing threat to public safety.

## 3.   DRUG OR ALCOHOL INVOLVEMENT

**A**   The record indicates limited or non-involvement with substance use.

**D** The record indicates excessive substance use involvement.

## 4. INSTITUTIONAL ADJUSTMENT

**A** The record indicates that the offender has maintained a satisfactory institutional adjustment.

**D** The record indicates that the offender has an unsatisfactory institutional adjustment.

## 5. ADJUSTMENT DURING PERIODS OF SUPERVISION

**A** The record indicates successful periods of supervision on probation, parole, or mandatory supervision.

**D** The record indicates unsuccessful periods of supervision on previous probation, parole, or mandatory supervision that resulted in incarceration, including parole-in-absentia.

## 6. PARTICIPATION IN TDCJ-CID PROPOSED OR SPECIALIZED PROGRAMS

**A** The record indicates participation in and completion of TDCJ-CID programs and activities in the individual treatment plan that should enhance chances to obtain and maintain full-time stable employment.

**D** The record indicates that the offender refused to participate or intentionally failed to complete TDCJ-CID programs and activities in the individual treatment plan.

## 7. TIME SERVED

**A** The record indicates that length of time served by the offender is congruent with offense severity and criminal history.

**D** The record indicates that length of time served by the offender is not congruent with offense severity and criminal history.

## 8. FELONY OFFENSE

**D** The record indicates that the offender has been charged before a magistrate, indicted, or convicted by a court of competent jurisdiction, with a felony offense committed while incarcerated.

**9.     DISCRETIONARY MANDATORY SUPERVISION-For a vote not to release, it is necessary to vote both D1 and D2, along with any other reasons that may apply.**

      **A**       Release to Discretionary Mandatory Supervision

      **D1**       The record indicates that the offender's accrued good conduct time is not an accurate reflection of the offender's potential for rehabilitation.

      **D2**       The record indicates that the offender's release would endanger the public.

**10.    GANG AFFILIATION**

      **A**       The record indicates that the offender is not a confirmed member of one of the TDCJ-CID designated security threat group.

      **D**       The record indicates that the offender is a confirmed member of one of the TDCJ-CID designated security threat group.

**11.    OTHER**

      **A or D**       Write an explanation.

Please feel free to reply with comments/questions.

Regards, RME.

Raymond M. Estrada

Director, Public Information

The Texas Board of Pardons and Paroles

8610 Shoal Creek Boulevard

*B*

Austin, TX, USA • 78757

T (512) 406-5870 • F (512) 406-5482

W http://tdcj.state.tx.us/bpp/

*Ex H. C.*

NAME: PADILLA,GUADALUPE
SID NUMBER: 03034615                    TDCJ-ID NUMBER: 01088118
TDCJ-ID UNIT OF ASSIGNMENT: TERRELL
HOUSING ASSIGNMENT: DORM E 3            BED: 037

SUBJECT: Decision Not to Grant Parole - NEXT REVIEW

      After a review of your case, the Board of Pardons and Paroles
decision is not to grant you parole and has set your next parole review
date as 05/2018.

      You have been denied parole for the reason(s) listed below:
One or more components indicated in each paragraph listed below may
apply, but only one is required.
2D.   THE RECORD INDICATES THAT THE INMATE COMMITTED ONE OR MORE
      VIOLENT CRIMINAL ACTS INDICATING A CONSCIOUS DISREGARD FOR THE
      LIVES, SAFETY, OR PROPERTY OF OTHERS; OR THE INSTANT OFFENSE OR
      PATTERN OF CRIMINAL ACTIVITY HAS ELEMENTS OF BRUTALITY, VIOLENCE,
      OR CONSCIOUS SELECTION OF VICTIM'S VULNERABILITY SUCH THAT THE
      INMATE POSES A CONTINUING THREAT TO PUBLIC SAFETY; OR THE RECORD
      INDICATES USE OF A WEAPON.
1D.   THE RECORD INDICATES THAT THE INMATE HAS REPEATEDLY COMMITTED
      CRIMINAL EPISODES OR HAS A PATTERN OF SIMILAR OFFENSES THAT
      INDICATES A PREDISPOSITION TO COMMIT CRIMINAL ACTS WHEN RELEASED;
      OR THE RECORD INDICATES THAT THE INMATE IS A LEADER OR ACTIVE
      PARTICIPANT IN GANG OR ORGANIZED CRIMINAL ACTIVITY; OR THE RECORD
      INDICATES A JUVENILE OR AN ADULT ARREST OR INVESTIGATION FOR
      FELONY AND MISDEMEANOR OFFENSES.

      The Institutional Division will monitor your treatment plan progress
and will report your progress to the Board of Pardons and Paroles.

      Should you have any questions regarding this notice you are to
contact your unit Institutional Parole Office.

This Notice of the Parole Panel Action is your written detailed
statement as required by Texas Government Code SECTION 508.1411.
NEXT REVIEW
CC: OFFENDER

```
 CSSUKA2A              TEXAS DEPARTMENT OF CRIMINAL JUSTICE          09/16/2015
 BPPDCICS/1JXE              MINUTES DETAIL INFORMATION                  13.22.58
 SID NUMBER: 03034615        TDCJID NUMBER: 01088118        PIA NUMBER:
 NAME: PADILLA,GUADALUPE              PROCESS TYPE: CURRENTLY AN INMATE   EXH. D.
 ACTION DATE:  06/24/2015                  ACTION: NR      05/01/2018
 PAROLE GUIDELINE SCORE: ●        ACTION TYPE: RECORD HAS NO ACTION TYPE
 PAROLE BOARD MEMBER         ACTION      PAROLE BOARD MEMBER         ACTION
 CYNTHIA TAUSS       NR     05/01/2018  JAMES 'Jim' LAFAVERS FI-9R  12/01/2015
 DAVID GUTIERREZ     NR     05/01/2018  MICHELLE SKYRME       NR    05/01/2018
```

REASONS: 2D  1D

SPEC COND:

"Z" COUNTIES:          "A" COUNTY:

COMMENTS: BPP-DIR.145.301 APPLIES.

```
 PF1=HELP       PF3=PREV MENU      PF5=MINUTES       PF12=TDCJ MENU      CLEAR=EXIT
 -- REQUESTED MINUTES DETAIL IS DISPLAYED.
```

July 17, 2015

Guadalupe Padilla #1088118
C.T. Terrell Unit
1300 FM 655
Rosharon, TX 77583

BOARD OF PARDONS AND PAROLES -
BOARD ADMINISTRATOR
P. O. Box 13401
Austin, TX 787<u>11</u>

REQUEST FOR SPECIAL REVIEW OF PAROLE DENIAL

Dear BPP - Board Administrator:

Pursuant to Texas Administrative Code, Title 37, Part 5, Chapter 145, Rule 145.17, Offender Padilla requests a "special review" of his parole denial. This request is based on allegation that the parole panel committed an "error of law" and "error of parole rules." To be specific, Offender alleges that the parole board review panel decision violates or is in direct conflict with the provisions of Texas Government Code §508.046, and the Texas Administrative Code, Chapter 145, Rule 145.3(F)(4); in the following regards:

1. <u>Error of Law</u> - (violation of Tex. Gov't. Code §508.046)
   Offender asks whether members of the Parole Board Review Panel voted on the release of Offender Padilla without first reviewing a copy of a written report from the department on the probability that the inmate would commit an offense after being released on parole. The Board's decision conflicts with the Department's Record and Reports of offenders, as used by the department in determining "suitability" of an offender for parole.
   (a). TDCJ-ID, Time Sheet Report - Accrued Good Conduct Time;
   (b). TDCJ-ID, Classification Status Sheet;
   (c). TDCJ-ID Disciplinary History Record;
   (d). TDCJ-ID, Work Time Credits;
   (e). TDCJ-ID / Wyndham School District - (Inmate Treatment Plan)

   Offender Padilla would respectfully urge the parole panel to revisit the Departments Report (report as described under §508. 046), and said Reports described above, enter said Department Re-

port into the record of these proceedings, and serve copy of said Department's Report upon Offender Padilla, for reconsideration of Offender's suitability for parole. Accured good conduct time is both: (1). evidence of inmate's institutional adjustment; and (2). information in support of parole. (see Felan v. State, 44 S.W.3d 249, 257 (Tex.Crim.App.)).

2. **Error of Parole Rule** - (violation of Tex. Admin. Code, Chapter 145, Rule 145.3(F)(4)).

Offender alleges the parole Panel violated Rule 145.3(F)(4), when they considered offender's litigation activities when determining offender's candidacy for parole during parole review process. During the parole interview, the parole in-viewer recited and asked Offender to respond to a "narrative" of the crime for which Offender was convicted, that included statements from alleged victim, evidence from trial, etc.. The narrative invited Offender to respond to highly preju-dicial, incriminating and inculpatory evidence that could be used against Offender in his post-conviction litigation pending in State and Federal courts. Offender specifically told interviewer that he had litigation pending regarding the conviction for which he was being considered for parole.

This request for special review is submitted in good faith and with all due respect to the parole review panel. Offender prays for only a fair re-consideration of "ALL" reports from the Department that are considered relevant to Offender's suitability for parole. In addition, Offender asks the Parole Review Panel to support its decision with the Departments Reports reflecting reasons for denying parole.

Respectfully submitted,

_Guadalupe Padilla,_ ————



# STATE OF TEXAS
# BOARD OF PARDONS AND PAROLES

October 07, 2015

Mr. Guadalupe Padilla
TDCJ-CID/SID # 01088118
Terrell Unit
Dorm E-3/Bed 037
1300 FM 655
Rosharon, Texas 77583

Dear Mr. Padilla:

This is to acknowledge receipt of your correspondence dated July 17, 2015 and September 18, 2015.

Special Review applies to cases reviewed during the normal review process and denied release to parole or mandatory supervision. A request for a Special Review shall be considered only in the following circumstances.

1. A parole panel member who voted with the majority on the panel desires to have the decision reconsidered prior to the next review date.

2. A written request on behalf of an offender cites information not previously available to the parole panel. In accordance with Section 145.17 (C), Texas Administrative Code, all requests for special review shall be in writing and signed by the offender or their attorney.

   Information not previously available shall mean only:

   (A) responses from trial officials and victims;

   (B) a change in an offender's sentence and judgment; or

   (C) an allegation that the parole panel commits an error in law or board rule.

   Allegation(s) must clearly show/state the error in law or board rule.

3. If both parole panel members who voted with the majority are no longer active board members or parole commissioners, the presiding officer (chair) or designated board member may place the decision in the special review process to be reconsidered prior to the next review date.

Your request does not meet one of the above criteria at this time.

The Parole Board reviews all aspects of an offender's case, including but not limited to: institutional adjustment and program participation, family support, time served, length of sentence, nature of offense, criminal history, and current offense(s). Offenders should receive a Notice of Parole Panel Action that states the Board's decision and reason(s) for the decision after each and every review.

The information you provided will be placed in the permanent file to be available for consideration by the parole panel at the appropriate time.

Respectfully,

*Beth Benoit*

Beth Benoit
Program Supervisor I

BB/ry
cc: File